In the Matter of the Claim of Ross Marinaro, Respondent, against Arthur Shapiro, Doing Business as Shapiro Hardware Company, et al., Appellants. Workmen's Compensation Board, Respondent.

Third Department, May 16, 1960.

*Brown, Zurett, Sullivan, Smith & Gough* (*George A. Ryder* with him on the brief; *Robert Skipworth,* attorney), for appellants.

*Louis J. Lefkowitz, Attorney-General* (*Edward A. Bailey* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

*Salvatore M. Le Monaco* for claimant-respondent.

BERGAN, P. J. Claimant's regular assignment in the hardware supply business of the employer was clerical work. This he described as " definitely light work ". When the employer was short of help, claimant also made deliveries of materials. He said this averaged about two days a week.

On July 31, 1954 claimant delivered 30 cases of tile to a customer, each weighing 75 pounds. It was a hot day; the temperature was 86 degrees. In the actual performance of this heavy work claimant suffered an acute heart attack which was diagnosed as a myocardial infarction.

The nonmedical facts thus present a classic case of industrial accident heart attack. We have reviewed and affirmed on appeal a very substantial number of cases arising from heart conditions attributed to accidents based upon records which do not as

clearly demonstrate, as does the record now before us, direct cause and effect.

Reversal is sought because of some inconsistencies in the manner of expressing medical views; but in the light of the strong nonmedical proof of accident we would not reverse and remit to require claimant to fill in the gaps with medical opinions obviously available to him, if hundreds of records on appeal are indices of availability, if we can fairly see in this record substantial evidence in support of the finding of the board that there was an accidental relationship between the work and the myocardial infarction.

If some inconsistencies and vagaries in the views of the medical witnesses be put in proper focus, and this is the essential nature of the fact-finding power of the board, we think there is enough to sustain the award without beginning again, six years after the accident, the recital of solemn medical affirmation of relationship.

Claimant's own doctor, a general practitioner, reported to the board the definite opinion that the myocardial infarction was due to an accident in the heavy work described, and he answered affirmatively the question whether the accident '' was a competent producing cause of the injury sustained ''.

Called as a witness, he testified in response to a hypothetical question that '' there [was] a relationship between the condition he developed and his work '' and he amplified this by saying, he meant by '' his work '', the definite occurrence of lifting cases of material on July 31.

He expressed the further opinion that '' there was a relationship between his exertion and the coronary thrombosis ''. On cross-examination this physician had difficulty demonstrating the exact physical processes which supported his opinion of the relationship.

Although there are some others, two questions and answers indicate the general nature of this difficulty: '' Q. Can you tell me just how such a thrombus would occur in a normal, healthy vessel? A. I don't know the definite answer to that. I don't think there is any. Maybe Dr. Kaltreider can tell you, he's a specialist. * * * Q. Why did he develop this coronary thrombosis and posterior infarction on July 31, 1954 when he was doing work which wasn't as heavy as he had done previously? A. I don't think anybody can answer why. There was some mechanism that caused a clot formation in his heart, and I told you before I couldn't give you that answer, why he developed the thrombosis, what the mechanism of it is, but it does happen as we all know.''

The fact-finders might decide not to accept the physician's view in the light of these answers; but in our opinion the answers did not, as a matter of law, destroy the expert basis of his view. From the innumerable records we have examined on this subject, there seems to be marked uncertainty among specialists on the actual physical processes by which a thrombus "would occur" in a normal vessel; at least some of the factors seem obscure; and "why did he develop this coronary thrombosis and posterior infarction on July 31?" is the kind of question to which it seems reasonable not to expect an exact answer or a demonstration of an exact mechanism.

Another witness, a specialist in internal medicine, called by claimant, expressed in the same answer the opinion both that the myocardial infarction "was not causally related to his work" and that "his [heavy] work may have been an aggravating factor".

A somewhat involved explanation in support of consistency between these statements was essayed by the witness, the ultimate purport of which seems to have been, and the board could find, that he felt this heavy work of July 31 could have been a factor in the heart attack.

The board had enough medical view to support its finding; and viewed, as it must be, most favorably to the fact-finding judgment of the board, the supporting medical opinion seems to meet the necessary minimal requirements of substantial evidence.

The decision and award should be affirmed, with costs to the Workmen's Compensation Board.

COON, GIBSON and REYNOLDS, JJ., concur with BERGAN, P. J.; HERLIHY, J. dissents: I dissent on the ground there is no causal relationship between the claimant's activities and the occurrence of the myocardial infarction.

Decision and award affirmed, with costs to the Workmen's Compensation Board.